UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FRITZ CHERIZARD,**

    Petitioner,

v.                                                            Case No. 8:17-cv-620-T-35AEP

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    Respondent.
_____/

## O R D E R

This cause comes before the Court on Fritz Cherizard's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. (Doc. 1) The Respondent, Secretary of the Florida Department of Corrections, filed a response in opposition to the petition. (Doc. 10) Cherizard filed a reply. (Doc. 12) Upon consideration of the petition, the response, and the reply, and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition lacks merit and must be denied.

I. **BACKGROUND**

Cherizard was indicted on mortgage fraud and related charges stemming from three separate real estate transactions. (Doc. 11, Ex. 1) On July 23, 2012, he pleaded guilty to one count of organized fraud, three counts of mortgage fraud by material misstatement, three counts of mortgage fraud by receiving proceeds, two counts of conspiracy to commit mortgage fraud, and four counts of fraudulent use of personal information. (Doc. 11, Ex. 2)

After pleading guilty but before sentencing, on September 11, 2012, Cherizard, through new counsel, moved to withdraw his guilty plea on the grounds that he discovered new, exculpatory evidence and his plea was involuntary. (Doc. 11, Ex. 3) The state court held an evidentiary hearing on the motion on September 13 and 14, 2012. (Doc. 11, Ex. 10) On September 27, 2012, the state court found that Cherizard failed to establish good cause to withdraw his plea and denied the motion. (Doc. 11, Ex. 4) The state court subsequently sentenced Cherizard to 130 months in prison. (Doc. 11, Ex. 5) The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 11, Ex. 7)

On August 1, 2014, Cherizard moved for postconviction relief under Florida Rule of Criminal Procedure 3.850, in which he raised numerous grounds for relief including that he was denied the right to effective assistance of counsel. (Doc. 11, Ex. 9) The parties filed extensive briefing on the issues raised by Cherizard, and on August 27, September 3, and October 29, 2015, the state court held an evidentiary hearing. (Doc. 11, Ex. 10) After considering the evidence presented at the evidentiary hearing, as well as written closing arguments submitted by both parties, the state court denied the motion. (*Id.*) The state court found that Cherizard failed to establish that his counsel acted deficiently or that he was prejudiced. (*Id.*) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 11, Ex. 12) It is the state court's denial of Cherizard's Rule 3.850 motion that forms the basis of his federal habeas petition.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1364 (11th Cir. 2009). AEDPA "establishes a highly deferential standard for reviewing state court judgments."

2

*Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). Under AEDPA, a federal court shall not grant habeas relief on claims that were previously adjudicated in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Under AEDPA, the Court's standard of review is "greatly circumscribed and is highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

3

*Williams,* 529 U.S. at 411. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## III. DISCUSSION

Cherizard raises two grounds for relief in his federal habeas petition. In Ground One, Cherizard asserts that he was denied the right to effective assistance of counsel when his counsel advised him to plead guilty based on misrepresented results of a defense expert's handwriting analysis. In Ground Two, Cherizard asserts that he was denied the right to effective assistance of counsel when his counsel failed to investigate whether the fax headers on certain documents were falsified, which constituted potentially exculpatory evidence. The State concedes, and the Court finds, that Cherizard's petition is timely and that he has exhausted his state court remedies. Therefore, the Court proceeds to address the merits of his petition.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the petitioner to demonstrate that he was denied the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

4

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 693-94. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). When evaluating performance, the Court must apply a strong presumption that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004). Furthermore, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994).

"The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the context of a guilty plea, to show prejudice, Cherizard "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In order to be entitled to relief, the petitioner must "prove serious derelictions on the part of counsel sufficient to show that

5

his plea was not, after all, a knowing and intelligent act." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985) (citations omitted).

### A. Ground One

In Ground One of his petition, Cherizard asserts that his counsel was ineffective for advising him to plead guilty based on alleged misrepresented results of the defense expert's handwriting analysis. Cherizard alleges that counsel misrepresented to him that the defense expert conclusively determined that Cherizard had, in fact, signed documents relevant to the charges, and that this conclusion was consistent with the State's handwriting expert's conclusion. Cherizard asserts that the defense expert instead concluded that, while some documents could have been written by Cherizard, some documents indicated they were not signed by Cherizard. Cherizard argues that counsel misrepresented the conclusive nature of the defense expert's report and convinced him to plead guilty rather than to determine if the results of the handwriting analysis would help his defense. He further alleges that had he known the defense expert's conclusion conflicted with the State's expert's conclusion, he would not have pleaded guilty, but would have insisted on going to trial. He alleges that he was not provided a copy of the defense expert's report until after he pleaded guilty and that his counsel's improper advice concerning the conclusive nature of the defense expert's report was the single most pertinent information he relied upon in deciding to plead guilty.

The state court held a three-day evidentiary hearing concerning Cherizard's claims of ineffective assistance of counsel, during which it heard testimony from defense counsel, Cherizard, and the state prosecutor.[1] At the hearing, Cherizard's counsel

---

[1] In his Rule 3.850 motion, Cherizard asserted claims of ineffective assistance of counsel against both his original defense counsel and his replacement counsel. The state court heard testimony from the

6

testified that the defense handwriting expert found that "there were similarities between some of the purported signatures made by the[] alleged victims[] and Mr. Cherizard's handwriting." (*Id.* at 1986) He further testified that the defense expert "corroborated some of what the State's expert was saying; not in all instances, but in some of the documents." (*Id.* at 1986-87) He testified that any discrepancies between the reports were not material and would not have been exculpatory. (*Id.* at 1996.) He testified that he communicated these results to Cherizard over the phone and by text before the plea hearing. (*Id.* at 1987) In a July 18, 2002 text, counsel wrote to Cherizard, "their handwriting expert (and ours) conclude you signed the documents." (*Id.* at 1841)

Cherizard testified that his counsel retained a handwriting expert "in order to convince [him] to plea, not to see whether . . . [he] did sign any documents or not." (*Id.* at 2297). He further testified that he did not receive the defense expert's report before his guilty plea and that he relied on what his counsel told him about the report in deciding whether to plead guilty. (*Id.* at 2027) He testified that had his counsel told him the truth, he would have gone to trial. (*Id.* at 2029)

Additionally, the court received into evidence the defense handwriting expert's report. In the report, the expert opined that some of the documents "and the purported known writings by Fritz Roosevelt Cherizard show indications . . . they could have been written by the same person." (Doc. 11, Ex. 10 at 1847) As to certain other documents, however, the expert opined that those documents "and the purported known writings by Fritz Roosevelt Cherizard show indication . . . they were not written by the same person."

---

replacement counsel concerning events that lead to the motion to withdraw the plea. In his habeas petition, however, Cherizard's claims, and the Court's review, are limited to the performance of his original defense counsel who represented him through the entry of his plea.

(*Id.*)  Additionally, the report states that "[i]ndications opinions are the weakest opinions offered and are far from conclusive."  (*Id.*)   In its written closing argument for the evidentiary hearing, the State acknowledged that the defense expert's analysis contradicted the State's expert's analysis "only insofar as three out of numerous documents in question."  (*Id.* at 2068)

The state court also heard testimony from the state prosecutor concerning the evidence it was prepared to introduce if Cherizard went to trial.  The prosecutor testified that this was a "very voluminous case" that involved hundreds of documents.  (*Id.* at 2020-21)  She testified that there were witnesses willing to testify that they did not sign the relevant documents and that their signatures were forged.  (*Id.* at 2022)  She testified the State's handwriting expert would testify that in some circumstances it was Cherizard who had forged those signatures.  (*Id.*)  She further testified that a co-defendant would testify against Cherizard.  (*Id.*)

After reviewing the allegations, the testimony, evidence, and arguments presented at the three-day evidentiary hearing, the written arguments, and the entire record, the state court ruled that Cherizard's counsel was not deficient in conveying the results of the defense expert's handwriting report and that Cherizard was not prejudiced by his counsel's performance.  The state court found that defense counsel's testimony was more credible than Cherizard's testimony; that defense counsel conducted fifty depositions and reviewed two boxes full of thousands of documents; that during the two years when defense counsel represented Cherizard, he discussed the evidence with Cherizard when he received it; that Cherizard previously acknowledged signing the documents at issue; and that although counsel did not remember whether he gave Cherizard a copy of the

8

defense expert's report, he did remember discussing the report with Cherizard before he entered the plea.

The state court also found that counsel did not believe that Cherizard had a viable defense based on the evidence the State could present at trial, including the testimony of several witnesses and a co-defendant who were willing to testify against Cherizard, as well as the voluminous documentary evidence. The state court found that counsel did not misrepresent the results of either the State's expert or the defense's expert when he advised Cherizard to enter the plea. Finally, the state court found that Cherizard failed to prove that counsel conspired to convince him to plead guilty and therefore did not show that he was prejudiced by counsel's performance.

A question of the credibility and demeanor of a witness is a question of fact. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Under Section 2254, "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*). "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsel's] testimony over the applicant's testimony."). The deference is heightened when reviewing

9

a credibility determination in a Section 2254 application. *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007).

Cherizard has not presented clear and convincing evidence that the state court's determination that Cherizard's counsel adequately conveyed the results of the defense expert's report to him before he pleaded guilty was unreasonable. The state court found defense counsel's testimony—that the defense expert's report corroborated the State expert's report, that any inconsistencies in the reports were immaterial, and that he communicated these results to Cherizard before he pleaded guilty—to be more credible than Cherizard's testimony to the contrary. (Doc. 11, Ex. 10 at 1749) This Court has "no license to redetermine the credibility" of either Cherizard or defense counsel. *See Consalvo*, 664 F.3d at 845. Accordingly, Cherizard has failed to meet his burden of rebutting with clear and convincing evidence the presumption of correctness afforded the state post-conviction court's credibility determination.

Furthermore, even assuming that counsel misrepresented the results of the defense expert's analysis or failed to convey adequately the results to Cherizard, it was not objectively unreasonable for the state court to find that counsel's performance was not deficient. Defense counsel testified that he did not advise his client to plead guilty based only on the results of the defense expert's report. (Doc. 11, Ex. 10 at 1997) Rather, counsel testified that that he advised Cherizard to plead guilty based on a variety of reasons:

> It was based on the cooperating defendants who had already pled and were scheduled to testify against Mr. Cherizard; it was the testimony of the victims whose deposition I had taken. Again, there was this control phone call that . . . was definitely to Mr. Cherizard and one of the other parties; . . . and just the

> lack of any viable defense. So it was the totality of all those factors.

(*Id.* at 1997-98) Again, Cherizard has not presented any evidence to rebut this testimony, and the Court must accept the state court's credibility determination giving credit to defense counsel's testimony over Cherizard's testimony. *See Baldwin*, 152 F.3d at 1316.

Finally, Cherizard has not met his burden to show that the state court's determination that he was not prejudiced was objectively unreasonable. After considering the entire record, the state court determined that defense counsel did not conspire to convince Cherizard to plead guilty. The state court acknowledged that Cherizard testified he would have gone to trial if defense counsel had been truthful about the defense expert's report. Nevertheless, the state court found defense counsel's testimony—that the defense expert's report was not exculpatory and that he conveyed these results to Cherizard before the plea hearing—more credible. Cherizard has not established by clear and convincing evidence that there is a reasonable probability that, but for counsel's representation of the defense expert's report, he would not have pleaded guilty and would have insisted on going to trial.

Cherizard's petition is essentially a re-hashing of arguments already thoroughly considered and rejected by the state court after comprehensive briefing and a three-day evidentiary hearing. Under these circumstances, the Court's review is "greatly circumscribed" and "highly deferential." *Crawford,* 311 F.3d at 1295; *Bell*, 535 U.S. at 693 (stating that AEDPA modified the federal habeas court's role "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law"). Accordingly, the Court concludes that Cherizard has failed to meet his burden of proving that the state court either unreasonably applied *Strickland* or

unreasonably determined the facts in light of the evidence presented, and therefore, Cherizard is not entitled to relief on Ground One of his petition.

## B. Ground Two

In Ground Two, Cherizard asserts that his counsel was ineffective for failing to investigate potentially exculpatory evidence, namely whether the fax headers on certain documents relevant to the charges were falsified. Specifically, Cherizard contends that counsel failed to provide discovery to him until five days before trial when, while reviewing the State's evidence for the first time, he discovered documents had been altered to include his "phone/fax number as a fax header to make it appear as if they were faxed from [his] fax machine." Cherizard claims that he immediately notified counsel of the falsified documents, but that counsel failed to investigate or move for a continuance to investigate and instead convinced him to plead guilty. He contends that after the guilty plea, his replacement defense counsel arranged for the documents to be tested, and that the results of such testing was exculpatory. The state court, however, found those test results not to be newly discovered, and denied Cherizard's motion to withdraw his plea. Accordingly, Cherizard argues that had his original defense counsel investigated the falsified fax headers, he would not have pled guilty and would have proceeded to trial.

At the evidentiary hearing, defense counsel testified that Cherizard's theory of falsified fax headers first surfaced five days before trial. (Doc. 11, Ex. 10 at 2001) He testified that before that date, Cherizard had admitted that he had faxed the documents at issue from several different fax machines. (*Id.* at 2002) He testified that he did not request a continuance to investigate the issue because they "were beyond any window of opportunity to move to continue at that point." (*Id.* at 2003) He testified that he did not

consider the theory to be a viable defense because it only applied to faxes sent from one of many fax machines that Cherizard used. (*Id.* at 2004) He further explained:

> [The State] still had all the other countless victim[s'] testimony, the co-defendant testimony, and everything else, that I didn't think that that was going to make any difference at all; one, defense-wise and second, as a justification to continue the case.

(*Id.* at 2004) He testified it would have been unreasonable to pursue the theory based on his 18 years of experience. (*Id.* at 2005-06)

Cherizard testified that he first reviewed the discovery five days before trial, when he discovered the fax headers had been falsified. (*Id.* at 2295, 2299) He testified that when he told counsel about the falsified fax headers and requested an investigation, counsel said he would request a continuance, but did not do so. (*Id.* at 2301) He conceded that at the plea hearing, during which he was represented by his counsel, he knew the fax headers had not been evaluated, but he told the state court he did not want further investigation to be performed. (*Id.* at 1873, 2323) He further testified that he decided to take an open plea so that he would have time to have the documents evaluated. (*Id.* at 2306) He testified that, after the plea, he did in fact have the documents evaluated with the help of his new counsel, and the experts' conclusions corroborated his theory that the fax headers were falsified. (*Id.* at 2307-09) He testified that this newly discovered evidence was the basis of his motion to withdraw his plea, which the state court denied. (*Id.* at 2307-08) Finally, Cherizard testified that he did not explain to counsel his theory of how the fax headers were falsified or who falsified them. (*Id.* at 2330-31)

After reviewing the allegations, the testimony, evidence, and arguments presented at the three-day evidentiary hearing, the written arguments, and the entire record, the

13

state court ruled that Cherizard's counsel was not deficient in deciding not to pursue the falsified fax header defense and that Cherizard was not prejudiced by this decision. The state court found that defense counsel's testimony was more credible than Cherizard's testimony; that counsel did not investigate the alleged falsified fax headers because Cherizard brought the theory to his attention a few days before trial; that counsel made a reasonable, strategic decision not to pursue Cherizard's fax header defense in light of the fact that such defense did not provide a complete defense to the charges; that counsel made a strategic decision to concentrate on preparing for trial to defend against the other evidence the State intended to present at trial, including the testimony of several witnesses and a co-defendant who would testify against Cherizard and the voluminous documents contained in two boxes; and that Cherizard did not provide any legitimate evidence of tampering. Finally, the state court found that Cherizard assured the court during the plea colloquy that there was no other investigation he wanted defense counsel to pursue before he entered his plea. Consequently, the state court found that Cherizard failed to prove that counsel acted deficiently or that he was prejudiced.

Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler*, 218 F.3d at 1314. Furthermore, "no absolute duty exists to investigate particular facts or a certain line of defense. Under *Strickland*, counsel's conducting or not conducting an

14

investigation need only be reasonable to fall within the wide range of competent assistance." *Id.* at 1317.

Cherizard presents no evidence to establish that counsel's decision not to pursue the falsified fax header defense was unreasonable. Rather, the record supports the state post-conviction court's conclusion that counsel strategically decided not to investigate this theory because it did not provide a complete defense to any of the charges. The reasonableness of counsel's decision is supported by his unrebutted testimony that the theory only applied to documents sent from one of many fax machines, when Cherizard had admitted sending faxes from several machines. The decision is further supported by Cherizard's admission that he did not explain how the fax headers were falsified or who did this. Consequently, it was not objectively unreasonable for the state court to find that counsel's performance was not deficient.

Additionally, Cherizard has not met his burden to show that the state court's determination that he was not prejudiced was objectively unreasonable. At the plea hearing, before he entered the plea, Cherizard assured the court that he did not want further investigation to be performed, despite knowing that the falsified fax header theory had not been investigated. A petitioner's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden

15

to show his statements were false."). His testimony that his experts later corroborated his falsified fax header theory after he pleaded guilty does not support his assertion that his plea was unknowing or involuntary when he entered the plea. Consequently, Cherizard has not demonstrated a reasonable probability that, but for counsel's decision not to investigate the falsified fax headers, he would not have pleaded guilty and would have insisted on going to trial.

Accordingly, the Court concludes that Cherizard has failed to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts in light of the evidence presented; therefore, Cherizard is not entitled to relief on Ground Two of his petition.

**IV.    CONCLUSION**

Accordingly, Cherizard's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**. The Clerk is directed to enter judgment against Cherizard and to **CLOSE** this case.

**IT IS FURTHER ORDERED** that Cherizard is not entitled to a certificate of appealability.  To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because Cherizard fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 13th day of March, 2020.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE